UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTHA MENZIE and
DANIEL CALLAHAN,

       Plaintiffs,                                  Hon. Hala Y. Jarbou

v.                                             Case No. 1:23-cv-129

TD AMERITRADE, INC. and
CHARLES SCHWAB COMPANIES,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiffs Martha Menzie and Daniel Callahan, proceeding pro se, filed their complaint in this case on February 1, 2023, against TD Ameritrade, Inc. (TDA) and Charles Schwab Companies, alleging various state-law claims and a claim purportedly arising under FINRA (Financial Industry Regulatory Authority) Rule 2270. (ECF No. 1 at PageID.16–18.) These claims arise out of Callahan's day-trading activity and associated losses in an investment brokerage account that he and Menzie opened with TDA. Plaintiffs claim that these losses occurred due to issues with TDA's trading platform called "Think or Swim." (*Id.* at PageID.1.) On February 5, 2023, the Court granted Callahan's motion for leave to proceed *in forma pauperis*. (ECF No. 5.) Following issuance of a deficiency order to Menzie, she paid her portion of the filing fee on February 7, 2023.

Presently before me is TDA's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or Rule 12(b)(6) and/or Motion for Summary Judgment Pursuant to Rule 56 and/or Motion to Compel Arbitration Pursuant to Sections 3 and 4 of the Federal Arbitration

Act (FAA), 9 U.S.C. §§ 3–4 and 9 U.S.C. § 206.[1]  (ECF No. 11.) Plaintiffs have filed a response

to the motion. (ECF No. 13.) TDA did not file a reply.[2]

Having fully reviewed the motion and supporting materials, as well as Plaintiffs' response,

pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** TDA's motion to

compel arbitration as set forth below.

## I.  Background

On March 30, 2019, Menzie, as the primary owner, opened a brokerage account with TDA

with an initial investment of $100,000. (ECF No. 1 at PageID.5; ECF No. 11-2.) Callahan, her son,

was listed as the secondary owner.[3]  (*Id.* at PageID.203–04.) In the Account Application, Plaintiffs

acknowledged reading and agreeing to TDA's Client Agreement. (*Id.* at PageID.205–06.) The

Client Agreement "governs all brokerage accounts" that the client opens with TDA, including all

transactions in the client's account, the use of TDA's brokerage services, TDA "Content," and

third-party "Content." (ECF No. 11-3 at PageID.208.) The Client Agreement also contained an

arbitration clause and advised that by agreeing to the clause, "[a]ll parties to this Agreement are

giving up their right to sue each other in court, including the right to [a] jury trial, except as

---

[1] TDA represents that "Charles Schwab Companies" is a non-existent entity. (ECF No. 11 at PageID.172 n.1.)

[2]  TDA's request for oral argument is denied as I find that the briefs adequately develop the issues in contention.

[3] According to TDA, in October 2019, Plaintiffs removed Callahan as a co-owner of the account and instead appointed him to serve as an Authorized Agent with full trading authorization and privileges to withdraw money and/or securities from the account. (ECF No. 11 at PageID.174; ECF No. 11-6 at PageID.251.) TDA argued in the now-terminated arbitration proceeding that Callahan lacked standing to prosecute claims related to the period of time after he ceased being an account owner and Menzie became the account's sole owner. (*Id.* at PageID.251–52.)

provided by the rules of the arbitration forum in which a claim is filed." (*Id.* at PageID.215.) The

arbitration clause provides:

> I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the Code of Arbitration of the FINRA. If any party unsuccessfully resists confirmation or enforcement of an arbitration award rendered under this Agreement, then that party shall pay all costs, attorneys' fees, and expenses incurred by the other party or parties in confirming or enforcing the award. Arbitration must be initiated by service upon the other party of a written demand for arbitration or notice of intention to arbitrate. Judgment, upon any award rendered by the arbitrator, may be entered in any court having jurisdiction.

(*Id.*)

Callahan's day-trading activity apparently did not go well over the following months.

Because Plaintiffs borrowed on margin (borrowing from the broker) to fund their security

purchases, they agreed to certain conditions, including account minimums and forced security

sales in the event the equity in the account dropped below the maintenance margin requirement.

On at least two occasions, the account equity fell below the minim requirement, resulting in a

forced sale of several hundred shares of stock each time to satisfy the margin requirement.

By August 2021, Menzie's original investment was substantially depleted. On August 20,

2021, Menzie invoked the Client Agreement's arbitration clause and filed a FINRA Statement of

Claim against TDA, alleging fraud and other claims. In connection with the arbitration proceeding,

Menzie signed a FINRA Arbitration Submission Agreement, pursuant to which she agreed to be

bound by FINRA rules and procedures. (ECF No. 11-4.) Thereafter, Menzie amended her

Statement of Claim three times, adding Callahan as a claimant and asserting various state-law

claims. Once added as a claimant, Callahan also signed a FINRA Arbitration Submission

Agreement. (ECF No. 11-7.) Plaintiffs' final Statement of Claim, dated January 23, 2022, mirrors

their complaint in this action. (ECF No. 1 at PageID.16–18; ECF No. 11-5 at PageID.234–35.) Plaintiffs' theory was and is that the margin calls and or losses in their account resulted from flaws in TDA's trading platform.

Through the FINRA process, FINRA arbitrator Kevin Zehe was selected as arbitrator (Chairperson) to preside over the proceeding. It appears that the matter was initially scheduled for an arbitration hearing for July 6–8, 2022, but due to discovery disputes and other issues, the initial date was adjourned. TDA sought to limit discovery to two margin call events, while Plaintiffs sought to broaden the scope of discovery. On May 23, 2022, Arbitrator Zehe held a hearing, at which he rescheduled a discovery hearing at Callahan's request; postponed the arbitration proceeding; granted TDA's motion for a protective order; and limited the scope of discovery and evidentiary hearings to address the margin call events of March 3, 2021, and August 20, 2021. (ECF No. 11-12 at PageID.301.) On May 25, 2022, Plaintiffs filed a request that Arbitrator Zehe recuse based on his statements during the May 25, 2022 hearing. (ECF No. 11-13.) Arbitrator Zehe denied the request on June 23, 2022. (ECF No. 11-14.) On July 19, 2022, pursuant to FINRA Rule 12407(a), Plaintiffs filed a Request for Chairperson Recusal with the FINRA Director, resulting in further adjournment of a discovery hearing and the arbitration proceeding. (ECF No. 11-15.) The Director denied Plaintiff's request on August 29, 2022. (ECF No. 11-16.) Plaintiffs filed a request for reconsideration of the denial of their request for recusal on October 12, 2022, which the Director denied on October 27, 2022. (ECF No. 11-17; ECF No. 11-18.)

During the proceeding, some of Plaintiffs' filings included statements and exhibits that were irrelevant, amounted to personal attacks on TDA's counsel, and could reasonably be construed as threatening in nature. For example, Plaintiffs' May 7, 2022 response to TDA's objection included pictures of TDA's counsel and pages from counsel's Facebook page having

nothing to do with the issues in contention. (ECF No. 11-8 at PageID.267–77.) In another filing in

May 2022, Plaintiffs described TDA's counsel's office as being in a mobile home park. (ECF No.

11-19 at PageID.282–83.) In a filing dated December 27, 2022, Plaintiffs wrote:

> It may only be suggested that the Defense Counselor's Appetite, Need and Greed
> from her around the corner Local Somerset Mall and Nieman Marcus Store
> shopping Niceties may far exceed her prevailing contingency fee earnings abilities
> and that such earnings may be best conserved and not spent upon such frivolous
> material perceived needs. Rather, the counselor is well advised to budget such
> income to be expended much like the counselor does upon their Trailer Park
> Offices. As Ms. Thomson realizes, she needn't so much as burden her GPS settings,
> as directly across the street from her favorite Somerset Shopping Mall is a
> significantly more budget accommodative facility and as comforting as the
> counselor's plush trailer park Office. As Ms. Thomson may testify, directly across
> the street from her Somerset Shopping Mall is the shopping conglomerate
> Headquarters, otherwise known as The K-Mart World Headquarters.

(ECF No. 11-20 at PageID.352.) Plaintiff's December 20, 2022 filing was their most concerning.

It included pictures of judges and opposing counsel from Callahan's prior court cases with what

can only be described as bizarre writing displayed on their faces, along with maps to their homes.

(ECF No. 11-19 at PageID.342–47.)

On January 20, 2023—eight days after a hearing in which Arbitrator Zehe questioned

Plaintiffs about these materials—the Director issued a notice pursuant to FINRA Rule 12203(a)

denying the parties use of the forum. (ECF No. 11-1.) Rule 12203(a) provides, in pertinent part,

that "[t]he Director may decline to permit the use of the FINRA arbitration forum if the Director

determines that, given the purposes of FINRA and the intent of the Code, . . . accepting the matter

would pose a risk to the health or safety of the arbitrators, staff, or parties or their representatives."

Plaintiffs initiated this case shortly thereafter.

## II.  Discussion

TDA contends that dismissal of this action is appropriate on several grounds. First, it

contends that the action is barred by the doctrine of res judicata. Second, although not citing a

5

specific legal basis, TDA contends that allowing Plaintiffs to pursue this litigation would set dangerous precent of permitting a party to escape its contractual obligation to arbitrate by engaging in harassment and/or abuse in the arbitral forum and rewarding such conduct with access to the courthouse. (ECF No. 11 at PageID.188–90.) Finally, TDA contends that if any claim survives the application of res judicata, the Court must dismiss or stay this case and compel Plaintiffs to arbitrate their claims pursuant to the FAA.

### A.    Motion Standard

TDA brings its motion pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and/or Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and/or for summary judgment pursuant to Rule 56. TDA moves for relief under all of these rules because some uncertainty remains in the Sixth Circuit as to the appropriate standard of review for a motion to compel arbitration. In *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832 (6th Cir. 2021), the Sixth Circuit recognized that, in considering a motion to compel under the FAA, the summary judgment standard will typically provide the proper framework. *Id.* at 838. But it also recognized that, in appropriate circumstances, a court might consider a motion to compel pursuant to Rule 12(b)(6). *See id.* (stating that "an arbitration contract could be seen as an affirmative defense to suit in a judicial forum," and that "perhaps a defendant could rely on Rule 12(b)(6) alone if it thinks dismissal is proper" (citing *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 988 (2d Cir. 1942), and *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 61 (2013)). Here, because TDA's motion relies on matters outside the pleadings that generally may not be considered on a motion to dismiss, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), and because the Sixth Circuit has recognized that a party may raise res judicata by way of summary judgment, *see Westwood Chem. Co. v. Kulick*, 656 F.2d 1224,

1227–28 (6th Cir. 1981) (noting that "it is now clearly established that res judicata can also be

raised by motion (citing *Hadden v. United States*, 105 F. Supp. 1010 (Ct. Cl. 1952) (res judicata

raised on motion for summary judgment))), summary judgment provides the standard of review

for TDA's motion.

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts

are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return

judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable

to the non-moving party but may grant summary judgment when "the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van*

*Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)).

## B.    Res Judicata

"The res judicata effect of a state-court judgment in federal court is governed by the Full

Faith and Credit Act, 28 U.S.C. § 1738." *Young v. Twp. Of Green Oak*, 471 F.3d 674, 680 (6th

Cir. 2006) (citing *Smith, Hinchman & Grylls, Assocs., Inc. v. Tassic*, 990 F.2d 256, 257 (6th Cir.

1993)). Section 1738 generally requires "federal courts to give preclusive effect to state-court

judgments whenever the courts of the State from which the judgments emerged would do so."

*Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

However, because arbitration is not a "judicial proceeding" under Section 1738, that statute does

not apply to arbitration awards. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,

765 F.3d 625, 629 (6th Cir. 2014). Even so, nothing precludes a court from considering whether

res judicata bars a subsequent action based on an arbitration award. *Id.*

Although TDA cites Michigan and Sixth Circuit caselaw pertaining to res judicata, those

cases did not involve a prior arbitration proceeding. In an unreported decision, however, the

Michigan Court of Appeals has held that "the application of res judicata and collateral estoppel

present questions for the arbitrator." *AFSCME Local 1128 v. City of Taylor*, No. 328669, 2017

WL 239484, at *4 (Mich. Ct. App. Jan. 19, 2017).[4] The court noted that, while no Michigan case

had addressed the issue, "numerous courts have determined that the application of res judicata and

collateral estoppel present questions for the arbitrator rather than the court." *Id.* (citing *Employers

Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 27 (1st Cir. 2014); *Klay v. United

Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004); *International Union v. Dana Corp.*, 278

F.3d 548, 555 (6th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132

(9th Cir. 2000); Independent Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*,

202 F.3d 965, 968 (7th Cir. 2000)). The court observed that, "like laches and matters of timeliness,

res judicata and collateral estoppel function as potential defenses to arbitration, and it is generally

for arbitrators to decide the application of defenses to arbitration." *Id.*

Here, there is no dispute that a valid arbitration agreement exists and that Plaintiffs' claims

are within the scope of the arbitration clause set forth in the Client Agreement. Plaintiffs

recognized this fact when they filed the prior arbitration proceeding. Thus, because the present

dispute is arbitrable, it is for the arbitrator to decide whether res judicata bars Plaintiffs' claims.

*See In re Automotive Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) ("Generally,

---

[4] Because Plaintiffs premise jurisdiction on diversity of citizenship, and the case involves only state-law claims, I find it appropriate to apply Michigan law regarding the application of res judicata. *See W.J. O'Neil Co.*, 765 F.3d at 629.

'whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide.'" (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)))

### C.    Motion to Compel

Under section 2 of the FAA, "a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The purposes of the FAA are to "override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Id.* (citing *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995); and *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 52–54 (1995)). When faced with a motion to compel arbitration under the FAA, the district court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.*; *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). In making these determinations, "any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio*, 340 F.3d at 392. The court need not hold an evidentiary hearing before compelling arbitration as long as the parties have been provided the opportunity to fully brief the issue and there has been no showing of disputed factual questions going to the legal issue of arbitrability. *See Patteson v. McAdams Tax Advisory Grp., LLC*, No. 09–2085, 2010 WL 711161, at *3 n. 5 (W.D. Tenn. Feb. 14, 2010) (citing *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d

155, 159 (6th Cir. 1983)); *Novak v. JP Morgan Chase Bank*, No. 06–14862, 2008 WL 907380, at

*3 (E.D. Mich. Mar. 31, 2008).

As set forth above, there is no issue that Plaintiffs and TDA agreed to arbitrate all disputes

concerning the account, including issues governed by the Client Agreement, and that Plaintiffs'

claims are within the scope of the agreement to arbitrate pursuant to FINRA's Code of Arbitration.

(ECF No. 11-3 at PageID.215.) In addition, because Plaintiffs do not assert federal claims, there

is no need to consider Congress's intent as to arbitrability.

The remaining issue is whether the Court should stay or dismiss this action pending

arbitration. TDA cites Sections 3 and 4 of the FAA in support of its request to compel arbitration

and dismiss the case. Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such arbitration,
> the court in which such suit is pending, upon being satisfied that the issue involved
> in such suit or proceeding is referable to arbitration under such an agreement, shall
> on application of one of the parties stay the trial of the action until such arbitration
> has been had in accordance with the terms of the agreement, providing the applicant
> for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4 provides a detailed and expeditious procedure for petitioning a district

court to compel a recalcitrant party to arbitrate pursuant to an agreement. Following a hearing, if

a court is satisfied that an agreement to arbitrate exists, and no dispute remains as to its making or

a failure to comply with its terms, "the court shall make an order directing the parties to proceed

to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If any issue remains

as to the making of the agreement or default thereunder, the court must conduct a jury trial (if

demanded) and summarily order the parties to arbitrate if the trier of fact finds that the parties

agreed to arbitrate and that the non-petitioning party is in default under the agreement. *Id.* Recent

Sixth Circuit authority indicates that the mandatory language of Section 3—that the court "shall .

. . stay the trial of the action"—limits a district court to staying the case when it compels the parties to arbitrate. *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–43 (6th Cir. 2021); *but see Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021) (noting circuit split and recognizing that when all claims are arbitrable and no gateway issues exist, district courts have discretion to stay or dismiss a case). Nonetheless, even the *Arabian Motors* panel acknowledged that dismissal might be appropriate in some instances, such as where the case is moot or there exists some pleading or procedural defect. 19 F.4th at 942. On the other hand, Section 4 simply directs a court to proceed to arbitration and does not include the mandatory stay language set forth in Section 3. Courts that compel arbitration under Section 4 generally hold that a court may dismiss a case where all of the claims are subject to arbitration. *See Rodriguez v. Block, Inc.*, No. 1:22-cv-372, 2023 WL 2854434, at *8 (W.D. Mich. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 2569116 (W.D. Mich. Mar. 20, 2023) (granting motion to compel under Section 4 and dismissing amended complaint); *Hall v. Pacific Sunwear Stores Corp.*, No. 15-cv-14220, 2016 WL 1366413, at *6 (E.D. Mich. Apr. 6, 2016) (compelling arbitration pursuant to Section 4 and dismissing complaint without prejudice).

The rub in this case—which TDA does not address—is that FINRA is no longer available as an arbitral forum in light of the FINRA Director's January 20, 2023 invocation of Rule 12203(a) denying use of the forum. Thus, the parties cannot be compelled to arbitrate the dispute with FINRA. These circumstances do not necessarily result in failure of the parties' arbitration agreement, as Section 5 of the FAA provides that, if in their agreement the parties fail to provide a method for naming or appointing an arbitrator, or there is a lapse in the naming of an arbitrator, either party may apply to the court to appoint an arbitrator.

Courts have applied Section 5 when a chosen forum becomes unavailable. In *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000), the Eleventh Circuit observed that the procedure under Section 5 applies "[w]here the chosen forum is unavailable . . . or has failed for some reason." *Id.* at 1222. The court observed that a court should decline to apply Section 5 "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'" *Id.* (citing *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1464 (N.D. Ill. 1990)). The arbitration clause at issue in *Brown* provided that any dispute "shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum [NAF]." *Id.* at 1220. Before the district court, the plaintiff argued that the arbitration clause had failed because the NAF no longer existed. Rejecting the argument, the district court compelled arbitration in another forum. *Id.* at 1220–21. The Eleventh Circuit found no error, as the arbitration clause had only specified use of NAF procedures, and there was no evidence that the choice of the NAF as the arbitration forum was integral to the agreement to arbitrate. *Id.* at 1222. Similarly, in *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006), *abrogated on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007), the arbitration clause provided that "[a]ny arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc. [NASD]." *Id.* at 1057. After the plaintiff deleted the only NASD member as a party to the arbitration proceeding, the NASD refused to take jurisdiction over the arbitration because no named party was a NASD member. The Ninth Circuit held that the district court erred in finding the claims no longer subject to arbitration and refusing to apply Section 5. The court observed that the provision specified that NASD rules would govern any arbitration, but did not require the arbitration to take place before the NASD. The court reasoned that, while the language in the arbitration clause

12

specifying use of NASD rules suggested that the parties also contemplated that the NASD would be the arbitral forum, there was no evidence that use of the NASD as an arbitrator was integral to the arbitration clause because "there was not even an express statement that the NASD would be the arbitrator." *Id.* at 1060.

Here, as in *Brown* and *Reddam*, the parties' arbitration clause specifies that any arbitration will be conducted pursuant to FINRA's Code of Arbitration, but it does not expressly state that FINRA will serve as the arbitrator. The reasoning of the foregoing cases, which I find persuasive, compels the conclusion that FINRA's unavailability as an arbitral forum does not render the arbitration clause invalid because FINRA's role as arbitrator was not integral to the parties' agreement to arbitrate.

To effectuate the appointment of an arbitrator, I recommend that the Court direct the parties to confer and agree on an alternate arbitrator who will apply FINRA's Code of Arbitration, if possible, and that if the parties fail to reach such agreement within 30 days of the date of the order, either TDA or Plaintiffs may apply to the Court for appointment of a proposed arbitrator(s). I further recommend that, in the event the parties fail to agree on an alternate arbitrator, and no application is presented to the Court for appointment within 45 days of the date of the order, the Court dismiss this matter without prejudice.

Finally, if the Court appoints an arbitrator pursuant to the above recommendation, it should decide whether to stay or dismiss the matter as permitted by Section 4. In light of Plaintiffs' past concerning conduct before FINRA, I recommend that the Court stay the case to allow TDA to move for dismissal with prejudice pursuant to the Court's inherent authority to sanction a party for bad faith conduct, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991), if Plaintiffs persist in the same type of conduct before the new arbitrator which interferes with the arbitration

proceeding. *See Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (indicating that sanctions pursuant to a court's inherent authority may be appropriate when a party compelled to submit to arbitration engages in bad faith conduct in the arbitration proceeding).

### III. Conclusion

For the foregoing reasons, I recommend that the Court **grant** TDA's motion to compel (ECF No. 11) and appoint an alternate arbitrator pursuant to the recommended procedure mentioned above or another procedure the Court deems appropriate. I further recommend that the Court stay this case to allow TDA to move for a sanction of dismissal with prejudice if Plaintiffs engage in bad faith conduct before the alternate arbitrator.

Dated: May 17, 2023                                  /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).